Robyn Fyffe ISB# 7063
FYFFE LAW LLC
800 W Main St, Ste 1460
Boise, Idaho 83702
Telephone: (208) 338-5231
Facsimile:  (208) 917-4596
robyn@fyffelaw.com

Attorney for the Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-cr-258-BLW-7 |
| Plaintiff, | |
| vs. | **DEFENDANTS MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS** |
| DAVID BIBIKOV, | |
| Defendant. | |

The Defendants[1] move the Court, pursuant to Federal Rules of Evidence 401, 402, 403, and 404(b), and the Due Process Clause of the Fifth Amendment, to exclude all evidence of uncharged trademark violations, evidence that the United States Customs and Border Patrol ("CBP") seized merchandise destined for Defendants and others, and alleged violations of Amazon's online selling policies from trial. As explained more fully below, evidence that Defendants infringed on trademarks other than those at issue in the indictment constitutes evidence of other wrongs governed by Rule 404(b), is insufficiently relevant for a permissible

_____

[1] This motion is filed on behalf of Pavel Babichenko, Gennady Babitchenko, Piotr Babichenko, Timofey Babichenko, Kristina Babichenko, Natalya Babichenko, David Bibikov, Anna Iyerusalimets, and Mikhail Iyerusalimets (collectively the "Defendants").

1  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED
TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

purpose and, in any event, must be excluded because the Government failed to comply with the

Rule's notice requirements. Similarly, Amazon policies and alleged violations of CBP statutes

were not disclosed as Rule 404(b) evidence, are inadmissible under that rule, and risk confusion

and substantial unfair prejudice. Accordingly, the Court should preclude this evidence in limine.

## BACKGROUND

According to the Government, the Defendants conspired to import and sell counterfeit

Apple iPhones and Samsung S4 and S5 phones, as well as Apple and Samsung chargers, earbuds,

batteries, labels, and packaging. Superseding Indictment, ECF No. 210 (Count 20). Counts 21 to

34 of the superseding indictment each charge trafficking in counterfeit goods in violation of 18

U.S.C. § 2320(a)(1) and collectively identify approximately 12 Apple and Samsung trademarks,

including the Apple design, word marks for Apple and iPhone, and the stylized Samsung word

mark. The conspiracy count charges all Defendants with conspiring to import counterfeit goods

in violation of the 12 trademarks identified in the substantive counts and an additional 11

Samsung and Apple trademarks, such as Touchwiz and Galaxy.

As evidence the Defendants conspired to traffic and trafficked in counterfeit goods, the

Government seized: 1) phones and accessories, which either the Government, Apple, or Samsung

purchased directly from the Defendants; 2) Apple and Samsung phones and accessories seized

from approximately 2,500 packages that Defendants shipped to customers and which the US

Postal Service seized pursuant to search warrant; and 3) pallets of Apple and Samsung phones

and accessories seized from the Defendants' warehouses and residences during the search

warrants.

In addition to the 20 Apple and Samsung trademarks charged in the indictment, the Government disclosed its intent to offer evidence that the Defendants violated the UL certification mark, the Motorola, HTC, and Qualcomm trademarks, and unidentified packaging. However, Defendants' alleged violations of uncharged trade and certification marks are inadmissible under Rules 401, 402, and 404(b). Even if admissible for a permitted purpose, the evidence should be excluded on the basis of unfair prejudice, cumulative evidence and a waste of time under Rule 403.

The Government's proposed exhibit list further reveals that it intends to introduce: 1) evidence of phones and accessories from approximately 63 CBP seizures that were destroyed; 2) evidence of phones and accessories from approximately 3 CBP seizures that were remitted to a Confidential Human Source ("CHS") after he successfully petitioned for relief from the seizures; 3) phones and accessories from approximately 14 CBP seizures, which HSI maintained as evidence in this case; and 4) evidence that Amazon suspended or otherwise limited Defendants' selling rights due to "inauthentic" complaints and the Defendants' efforts to contest those suspensions.

However, Defendants' supposed violation of CBP statutes and Amazon policies can neither be offered as prior "acts" of counterfeiting nor evidence that the subject goods were "counterfeit." While such evidence is covered by Rule 404(b), the Government failed to include it in its notice and it should be excluded on that basis. And evidence regarding the destroyed seizures must be excluded to protect the Defendants' rights to present a meaningful defense and to due process.

3  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED
TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

Finally, the definition of "counterfeiting" under 15 U.S.C § 1127 and 19 U.S.C § 1526, which apply to CBP seizures, is distinct from the definition of "counterfeiting" under 18 U.S.C § 2320, which governs this criminal prosecution. Amazon's constantly-changing internal policies on "authenticity" are even farther removed from the criminal definition of counterfeit goods. Thus, evidence that Defendants' products may have violated civil statutes and business policies risk significant unfair prejudice and confusion. Accordingly, evidence of the CBP seizures and evidence regarding the Defendants' violations of Amazon policies are inadmissible under Rules 401, 403, and 404.

## ARGUMENT

Only relevant evidence, which is evidence that has any tendency to make a fact that is of consequence in determining the action more or less probable, is admissible at trial. Fed. R. Evid. 401, 402.  Relatedly, Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." That evidence may be admissible, however, if it is relevant to a permissible purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Further, in a criminal case, Rule 404(b)(3) requires that the Government provide pretrial notice of any Rule 404(b) evidence it intends to introduce at trial. If the Government fails to give notice, that evidence will be inadmissible unless the Government shows good cause. Fed. R. Evid. 404(b)(3)(C).

The district court can exclude even relevant evidence, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the

4  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED
TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

jury, [and] wasting time . . . ." Fed. R. Evid. 403. And, in a criminal case, Rule 404(b)(3) requires

that the Government provide pretrial notice of any Rule 404(b) evidence it intends to introduce at

trial. If the Government fails to give notice, that evidence will be inadmissible unless the

Government shows good cause. Fed. R. Evid. 404(b)(3)(C).

**A.    The Court must exclude evidence that the Defendants violated trade or certification marks not listed in the indictment and allegedly counterfeit packaging not charged in the indictment**

In approximately 2013, Apple and Samsung began investigating the Defendants and

collaborated with the FBI and HSI. The Government, Apple and Samsung purchased evidence

from the Defendants' online stores and, in August 2018, the Government indicted the

Defendants, identifying Apple and Samsung as victims. The Government specifically alleges that

the Defendants infringed on 8 trademarks registered by Apple and 13 registered by Samsung

when they trafficked counterfeit iPhones, Samsung phones, related Samsung and Apple

accessories, and packaging on or in connection with those goods.

Contemporaneous with the indictment, the Government executed search warrants of the

Defendants' businesses and residences and seized thousands of Apple and Samsung phones and

accessories along with scattered products bearing Motorola, Qualcomm and HTC marks. A few

weeks later, the USPO executed a search warrant for packages, which Defendants had mailed to

customers, and seized approximately 2500 parcels of predominantly Samsung and Apple

products.

In addition to evidence that Defendants violated the Apple and Samsung trademarks

charged in the indictment, the Government proposes to introduce evidence the Defendants

violated the UL certification mark and HTC, Motorola, and Qualcomm trademarks. Dkt. 784.

The Government also plans to "admit evidence related to counterfeit packaging discovered in the Bridger Warehouse." Dkt. 784. As explained below, the evidence of uncharged trademark violations and unspecified packaging is inadmissible under Rules 401, 403, 404.

1. **Evidence of uncharged trademark violations and "counterfeit" packaging are governed by 404(b) and are not inextricably intertwined with the charged conduct**

    a. **The uncharged "counterfeit" goods and packaging are not inextricably intertwined with the charges**

The Defendants' alleged possession or discussion of uncharged counterfeit goods or packaging is not inextricably intertwined with the charges in this case. As noted above, the investigation involved Apple and Samsung, they are the identified victims and the indictment alleges the Defendants imported counterfeit iPhones, Samsung phones, and related Samsung and Apple chargers, earbuds, batteries, labels, and packaging. These Samsung and Apple goods allegedly infringed on 8 trademarks registered by Apple and 13 registered by Samsung. The Government contends the Defendants smuggled counterfeit Apple and Samsung products from Hong Kong and China and repackaged them to appear new and genuine.

The Apple and Samsung goods, which the Government seized from Defendants through controlled purchases and search warrants, constitute a large majority of the evidence. Apple and Samsung purchased evidence from Defendants, examined the seized evidence bearing their marks, and Apple and Samsung representatives will testify at the upcoming *Daubert* hearing. Conversely, almost none of the Motorola, HTC or Qualcomm evidence has been examined by either party.

The investigation and charged conduct coherently convey a story involving allegedly counterfeit marks that were on or in connection with Samsung and Apple goods. Neither potential violations of other trademarks nor packaging that allegedly violates other statutes are inextricably intertwined. Rule 404(b) therefore applies to evidence related to uncharged "counterfeit" goods and packaging.

### b.   Even if the Court concludes any of this evidence is "inextricably intertwined," Rule 404(b) nevertheless controls because that is not the correct standard

Once a widely-accepted "exception" to Rule 404(b), various courts have abandoned the "inextricably intertwined" standard after recognizing its inherent problems. *See, e.g.*, *States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010); *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010); *State v. Kralovec*, 388 P.3d 583, 587 (Idaho 2017); *People v. Jackson*, 869 N.W.2d 253, 264 (Mich. 2015); *State v. Fetelee*, 175 P.3d 709, 737 (Haw. 2008); *see also United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). Although the Ninth Circuit has yet to do so, this Court should decline to apply the "inextricably intertwined" standard for at least five interrelated reasons.

First, that standard is inconsistent with the plain language of Rule 404(b), which applies to "any *other* crime, wrong, or act." (Emphasis added); *see Bowie*, 232 F.3d at 927. Whether the other acts evidence is "inextricably intertwined" with the charged crimes is irrelevant. Second, the inextricably intertwined standard is "unhelpfully vague," "has proved elastic and invites abuse," and "invites sloppy, non-analytical decision-making." *Green*, 617 F.3d at 245–46 (citing the criticisms of various scholars and courts). Third, that standard is wholly unnecessary. "If the so-called 'intrinsic' act is indeed part of the crime charged, evidence of it will, by definition,

7  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

always satisfy Rule 404(b)." *Bowie*, 232 F.3d at 927 (internal citation omitted). Fourth, the only

effect of the standard is to "relieve the prosecution of Rule 404(b)'s notice requirement and the

court of its obligation to give an appropriate limiting instruction upon defense counsel's request."

*Green*, 617 F.3d at 247 (quoting *Bowie*, 232 F.3d at 927). Fifth, the "inextricably intertwined"

standard places a criminal defendant's due process rights to a presumption of innocence and a

fair trial in jeopardy. *See Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *rev'd on other*

*grounds*, 538 U.S. 202 (2003) ("[I]t is not a violation of due process to admit other crimes

evidence, for purposes other than to show conduct in conformity therewith, *where the jury is*

*given a [proper] limiting instruction . . . .*") (emphasis added).

Therefore, this Court should not apply the "inextricably intertwined" standard. Instead, it

should ask the very question demanded by Rule 404(b)—whether the evidence is intrinsic to the

crime. The challenged Rule 404(b) evidence is "other" than, or is not intrinsic to, the charges in

this case.[2] Rule 404(b) applies to all of that evidence.

### c.   The Government's 404(b) notice insufficient and unclear

As the Defendants explained in their objection to that Notice, the Government failed to

meet the new requirements of Rule 404(b)(3)(A)–(C). See Dkt. 794. For each of the categories of

proposed evidence, the Notice describes the general nature of the evidence before claiming that it

is admissible for the same six purposes as to all nine Defendants and (potentially) all fifty-one

counts. Dkt. 784 at 4–6.

---

[2] The same is true of the other Rule 404(b) evidence in this case; regardless of whether the Court
concludes it is "inextricably intertwined," Rule 404(b) still controls because that evidence is
"other" than the charges in this case.

8  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED
TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

Additionally, the Government's 404(b) notice provides no description of the evidence that allegedly violates the HTC, Motorola and UL marks. Dkt. 784. The Government similarly fails to indicate whether the "counterfeit packaging" referred to in its notice infringes on the uncharged marks and/or is Apple or Samsung packaging, which is not connected to the goods charged in the indictment. Such notice if woefully inadequate under Rule 404(b) and the evidence should be excluded on that basis.

> **2.      The court should exclude evidence of uncharged trademark violations and unspecified packaging because the risks of cumulative evidence, confusion and unfair prejudice substantially outweigh any relevance for a permitted purpose**

This Court should also exclude evidence of the purported counterfeit goods and packaging from trial because the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time heavily outweighs whatever slight probative value that evidence might have. *See* Fed. R. Evid. 403. Allowing the Government to present that evidence will require the Defendants to challenge the purported counterfeit nature of the Qualcomm chargers as well as the counterfeit nature of unidentified evidence that infringes on the HTC, Motorola, and UL[3] marks for unidentified reasons. Those uncharged allegations will also unfairly prejudice the Defendants by once again inviting the jury to conclude that they are not law-abiding citizens and must be guilty of something. *See Looking Cloud*, 419 F.3d at 785; *Hewitt*, 617 F.2d at 972.

And it is not as if the Government is lacking evidence — certainly the thousands of Apple and Samsung products acquired through controlled purchases and search warrants provide a

---

[3] The Government also disclosed intent to introduce a trademark application submitted by Tim Babichenko. The Government fails to explain the reason the application is relevant and it should be excluded.

9  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

sufficient body of evidence. Multiple mini-trials on uncharged trademarks would divert the jury's attention from the real issues in the case, and waste precious time and resources in this already lengthy trial. *See Khan*, 508 F.3d at 417.

Similarly, to the extent the unspecified "counterfeit" packaging cited in the Rule 404(b) notice bears Apple or Samsung marks, it must be excluded unless it is on or in connection with counterfeit goods as charged in the indictment. The conspiracy count alleges that the Defendants imported and sold counterfeit Apple and Samsung phones, accessories, labels and packaging "on or in connection" with "goods" in violation of 18 U.S.C. § 2320(a)(1). Separately, § 2320(a)(2) criminalizes trafficking "in labels. . .boxes. . .or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive," when that packaging is not "on or connection with goods." Bulk packaging with spurious marks that was seized from the Defendants would violate Section (a)(2) only if intended to package counterfeit goods, whereas such packaging would not constitute a criminal offense if intended to repackage genuine products, such as refurbished phones re-packaged without the intent to deceive. 18 U.S.C. § 2320(g).

Again, delving into the complex issue of whether any packaging constitutes a crime other than the one charged risks considerable confusion and waste of time as mini-trials divert the jury's attention from material issues in the case, unfairly prejudice the Defendants, and lengthen an already extended trial. The Court must exclude that evidence.

**B.     The Court should exclude evidence that Defendants' merchandise was seized by CBP and the Defendants' allegedly violated Amazon policies**

The Defendants imported refurbished phones and parts, which they repaired and repackaged for sale *via* online platforms such as Ebay and Amazon. The CHS's businesses similarly imported refurbished phones and accessories. Around 2013 or 2014, Amazon modified its policies regarding sellers' ability to resell Apple and Samsung products on its platform. As a result, Amazon began advising the CHS and Defendants that their products were "inauthentic" and requiring proof that Apple or Samsung provided permission to sell their aftermarket products. Amazon suspended some of the Defendants' and CHS's online stores based on the "inauthentic" complaints and they asked Amazon to reverse these decisions or opened new businesses. The Government plans to introduce evidence of these alleged policy violations and the Defendants' responses.

The Government also intends to introduce evidence that CBP seized approximately 13 phone shipments and 11 accessory shipments in 2013 to 2014, which were destined for the CHS's businesses. CBP destroyed the 11 accessory shipments and about 10 of the phone shipments. However, the CHS successfully appealed about 3 phone seizures and the merchandise was released to him.

Between 2013 and 2015, the CBP seized and destroyed approximately 18 shipments destined for a business owned by a Defendant[4]  and 4 seizures of merchandise destined for an individual who is neither disclosed as witness nor charged as a defendant. In 2015, HSI contacted CBP and asked that seizures from the Defendants' businesses as well as others be maintained as

_____

[4] A single disclosed seizure of Motorola phones occurred in 2009.

evidence. Approximately 14 seizures were maintained by HSI between 2015 and 2018. The

Court should exclude all evidence of the seizures and Amazon policy violations as inadmissible.

1. **Neither the CBP seizures nor the Amazon policy violations are inextricably intertwined with the charged conduct and must be excluded for failure to give notice under 404(b)**

The Government provided no notice that it intends to offer the CBP seizures or the

Amazon evidence pursuant to Rule 404(b) evidence. Of course, the fact that Defendants

imported merchandise and sold products on Amazon is part and parcel with the Government's

case and does not fall within the Rule's notice requirements.

Nevertheless, the fact that CBP or Amazon determined the merchandise was counterfeit

or inauthentic constitutes "bad acts" other than those charged to prove propensity.  Similarly,

CBP's seizure of merchandise and Amazon's suspension of accounts are other acts and not

necessary to illustrate that the Defendants imported merchandise and sold it online. The Court

should exclude the CBP seizures and Amazon policies for failing to comply with Rule 404(b)'s

notice requirements.

2. **The definition of "counterfeiting" under the criminal statute is distinct from the definition of "counterfeiting" under the civil standard applicable for the CBP seizures and Amazon's authentication policies and, thus, evidence of those seizures or policy violations risk substantial unfair prejudice, cumulative evidence and mini-trials**

United States Customs' law authorized CBP to seize any merchandise bearing a

counterfeit mark as that term is defined within the meaning of 15 U.S.C.A. § 1127. 19 U.S.C §

1526(e). Under Section 1127, a "counterfeit" mark is a spurious mark which is identical with, or

substantially indistinguishable from, a registered mark. Conversely, to qualify as a "counterfeit"

mark under the criminal statute, the jury must also conclude that a spurious mark's use was likely

12  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED
TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

to cause confusion, to cause mistake, or to deceive. 18 U.S.C. § 2320(f)(1)(A)(iv). The Government must also prove that the Defendants intended to traffic in counterfeit goods and knowingly used a counterfeit mark whereas intent is not relevant to CBP's determination that merchandise is "counterfeit" under 19 U.S.C § 1526.

Accordingly, CBP's determination that merchandise was subject to seizure as "counterfeit" is not parallel to whether the goods are "counterfeit" in this proceeding. Indeed, CBP and the trademark holders determined the shipments contained phones that had been refurbished with "counterfeit" parts or stickers, the gist being that phones had been refurbished by a "third party" rather than by Apple or Samsung. Thus, CBP would seize a genuine after-market iPhone with a generic backplate and battery as "counterfeit" under 19 U.S.C § 1526(e). On the other hand, repackaging genuine phones with unauthorized backplates in "counterfeit" boxes is not a crime, 18 U.S.C. § 2320(g).

Similarly, an "inauthentic" finding by Amazon is primarily based on whether the seller has a contract with the trademark holder to resell the product and is not a finding that a phone or other product was "fake" or a "knock off." Worse, Amazon policies present an ever moving target and what Amazon deems an "authentic" product one week could result in suspension the next.

Accordingly, allowing the jury to hear that either CBP or Amazon determined products were "counterfeit" or that Defendants violated those laws or polices would risk confusing the jury in an area of the law that is already sufficiently perplexing for a layperson. As such, evidence of "counterfeit" findings under civil and business policies risks extreme unfair prejudice.

13  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

And where evidence was seized because Apple or Samsung did not authorize the particular backplate or battery being use in its genuine phone, Defendants disputed that it was rightfully seized. Indeed, the CBP reversed 3 of the CHS's seizures after finding the phones' refurbished nature did not run afoul of trademark law. Should the Court allow evidence that CBP or Amazon determined a product was "counterfeit," Defendants will introduce evidence that the determination was in error. Such evidence thus risks "mini-trials" regarding Apple, Samsung and Amazon findings, in addition to whether Defendants violated the criminal statutes at issue.

   3.     **The Court should exclude evidence of phones and accessories from the approximately 63 CBP seizures because their destruction aggravates the admissibility issues discussed above and would violate due process**

CBP destroyed approximately 35 of approximately 50 seizures between 2013 and 2015 that the Government intends to introduce, over half of which were destined for businesses not owned by Defendants. That destruction and the entirely distinct legal standard significantly disadvantages Defendants' ability to contest the trademark holders' claims that the merchandise was "counterfeit." That evidence is inadmissible.

To begin, the Court should exclude evidence of the destroyed seizures pursuant to Rule 403.  As discussed above, the probative value of the secondary evidence of the destroyed, uncharged goods is weak at best. But it will require a significant amount of time and resources to litigate the merits of every destroyed seizure, some of which contained multiple types of devices, using just the remaining secondary evidence. The result will be at least forty-six mini-trials within this already lengthy trial. *See Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) ("admitting [the challenged] testimony might have resulted in a 'mini trial,' considering that much of their testimony was disputed by Defendants. The trial court could

reasonably conclude this would be an inefficient allocation of trial time."). Admitting evidence of the destroyed seizures also runs the substantial risk of unfairly prejudicing the Defendants by inviting the jury to simply accept CBP's conclusions about the alleged counterfeit nature of the destroyed goods under an entirely distinct legal standard, and then likewise conclude that the goods listed in the substantive trafficking in counterfeit goods charges must also be counterfeit. *See United States v. Looking Cloud*, 419 F.3d 781, 785 (8th Cir. 2005).

Next, this Court should also exclude the destroyed seizures to vindicate the Defendants' right to due process. The Government violates a defendant's right to due process when it (1) destroys materially-exculpatory evidence or destroys potentially-exculpatory evidence in bad faith,[5] and (2) the defendant is unable to obtain comparable evidence by reasonably available means. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *California v. Trombetta*, 467 U.S. 479, 489 (1984); *United States v. Barton*, 995 F.2d 931, 934 (9th Cir. 1993). That standard is met here.

First, the destroyed evidence had materially-exculpatory value because they would have played a significant role in the defense against the conspiracy charge by showing the legitimacy of the goods, *see Trombetta*, 467 U.S. at 488 (materially exculpatory evidence "might be expected to play a significant role in the suspect's defense"), or at the very least potentially-

_____

[5] *Youngblood*'s bad faith requirement only applies to evidence that is potentially, rather than materially, exculpatory. *See Illinois v. Fisher*, 540 U.S. 544, 549 (2004) ("the applicability of the bad-faith requirement in *Youngblood* depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between "material exculpatory" evidence and "potentially useful" evidence.").

exculpatory value because, if the Defendants had access to them, the Defendants would be able to meaningfully challenge the Government's characterization of those goods as counterfeit by subjecting the goods to examination and testing by their experts. *See United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015) (evidence is "potentially exculpatory" if it "it could have been subjected to tests, the results of which might have exonerated the defendant."). Second, the Government destroyed the seized goods in bad faith. Had the Government decided to charge any of the Defendants directly with trafficking in the destroyed, purportedly counterfeit goods, it would have needed to present the goods to show that they were actually counterfeit. Third, the Defendants cannot obtain comparable evidence because none exists. *See Trombetta*, 467 U.S. at 489.

Finally, the Court should exclude evidence of destroyed seizures pursuant to the common-law, which balances "the quality of the Government's conduct and the degree of prejudice to the accused." *United States v. Zuniga-Garcia*, 472 F. App'x 498, 499 (9th Cir. 2012) (quoting *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011); *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir.1979) (en banc) (Kennedy, J., concurring[6]), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008)). "The Government bears the burden of justifying its conduct and the defendant bears the burden of demonstrating prejudice."

The quality of the Government's conduct in this case, balanced against the prejudice to the Defendants, weighs in favor of the excluding evidence of the destroyed seizures. Admitting

---

[6] Judge Kennedy's concurrence in *Loud Hawk* is controlling. *See Sivilla*, 714 F.3d at 1173.

evidence of the destroyed goods is not necessary to prevent speculation on the part of the jury; indeed, admitting it may cause the jury to put undue weight on that only slightly-probative evidence.

Most importantly, the evidence's destruction ensured that admitting that evidence will prejudice the Defendants by making it impossible for them to meaningfully challenge its claim that the seized goods were counterfeit. Balancing the quality of the Government's conduct against the prejudice to the Defendants, this Court should exclude evidence of the destroyed seizures as inadmissible under Rules 403 and 404(b), as well as the constitution and common law principles.

4.    **The Court should exclude evidence of phones and accessories seized by CBP, which allegedly violated trademarks not listed in the indictment**

Approximately a dozen of the destroyed seizures involve products bearing the Motorola or HTC trademarks. As set forth above, those trademarks are not charged and evidence of any uncharged trademark violations must be excluded. Those bases are all the more pronounced were the evidence was destroyed in an administrative proceedings more than 5 years ago. Even if the Court allows evidence of the destroyed seizures, it should preclude evidence of seizures involve trademarks that are not charged in the indictment.

Respectfully submitted this 8th day of April, 2020.

FYFFE LAW


/s/  Robyn Fyffe
ROBYN FYFFE


17  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED
TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 8, 2021, I filed the foregoing document through the CM/ECF system, which caused the following parties to be served by electronic means:

Christian S. Nafzger, Assistant United States Attorney
Katherine L. Horwitz, Assistant United States Attorney
Office of the United States Attorney
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Kate.Horwitz@usdoj.gov
Christian.Nafzger@usdoj.gov

Tim Flowers, U.S. Department of Justice
1301 New York Ave. NW, Suite 600
Washington, D.C. 20530
Timothy.Flowers2@usdoj.gov

John DeFranco
1031 E. Park Blvd.
Boise, ID 83712
jcd@greyhawklaw.com
*Attorney for Pavel Babichenko*

Barry L. Flegenheimer
119 First Avenue South, Suite 500
Seattle, WA 98104
barrylfp@gmail.com
*Attorney for Pavel Babichenko*

Jeffrey Brownson
223 North 6th Street, Suite 215
Boise, Idaho 83702
jb@jeffreybrownsonlaw.com
*Attorney for Gennady Babitchenko*

Paul E. Riggins
380 South 4th Street, Ste. 104
Boise, ID 83702
rigginslaw@gmail.com
*Attorney for Piotr Babichenko*

18  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS

Andrew S. Masser
2399 Orchard Street, Ste. 204
Boise, Idaho 83705
Phone: 208-841-6131
andrew@baldaufmasser.com
*Attorney for Piotr Babichenko*

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com
*Attorney for Timofey Babichenko*

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com
*Attorney for Kristina Babichenko*

J.D. Merris
913 W. River Street, Ste. 420
Boise, ID 83702
jmerris@earthlink.net
*Attorney for Natalya Babichenko*

Charles Peterson
Melissa Winberg
Nicole Owens
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
dick_rubin@fd.org
melissa_winberg@fd.org
Nicole_Owens@fd.org
*Attorneys for Anna Iyerusalimets*

Ellen Nichole Smith
P.O. Box 140857
Garden City, ID 83714
ellen@smithhorras.com
*Attorney for Mikhail Iyerusalimets*

Thomas B. Dominick
500 W. Bannock Street
Boise, Idaho 83702
tom@dominicklawoffices.com
*Attorney for Artur Pupko*


                                    /s/  Robyn Fyffe
                                    ROBYN FYFFE


20  - DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED
TRADEMARK VIOLATIONS, CBP SEIZURES AND AMAZON POLICY VIOLATIONS