UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER REGARDING THE GOVERNMENT'S OBJECTION TO SELECTED JURY INSTRUCTIONS** |

# INTRODUCTION

Last summer, nine defendants in this case stood trial. The Court acquitted Gennady Babitchenko on a Rule 29 motion, and the jury acquitted Natalie Babichenko. Otherwise, the results were mixed, but the upshot is that the jury did not convict any defendant on any count. It acquitted some defendants on a few counts but hung on most. So seven defendants stood trial again this summer. The retrial is nearly complete: the evidence is in, the Court has instructed the jury, the attorneys have delivered closing arguments, and the jury is deliberating.

While awaiting the verdicts, the Court is writing this memorandum to further explain why it overruled the government's objections to certain jury instructions.[1] In particular, the government objected to the Court's description of the charge alleged in Count 1 of the indictment. That count charges all defendants with conspiring to commit wire fraud. The government also objected to the Court's instructions on mail and wire fraud.

## BACKGROUND

All defendants are charged with two conspiracies – conspiracy to commit wire fraud and conspiracy to traffic in counterfeit goods. Several defendants are also separately charged with discrete acts of wire fraud, mail fraud, and trafficking in counterfeit goods. The disputed jury instructions – described in more detail below – relate to the wire fraud conspiracy charge and to the substantive wire and mail fraud charges. *See Superseding Indictment,* Dkt. 210.

The starting point for the jury instructions is the indictment. The indictment describes the conspiracy to commit wire fraud as follows:

### The Conspiracy

14. Beginning in or about January 2008, and continuing through on or about August 14, 2018, the defendants . . . . engaged in a

---

[1] The Court typically does not issue written decisions on disputed jury instructions, so this memorandum does not address every dispute that was raised and resolved. The Court is writing on these issues because the government requested a written ruling.

scheme to defraud consumers by selling . . . counterfeit electronic devices, including counterfeit Apple and Samsung cell phones, that the defendants represented to be new and genuine.

### The Scheme to Defraud

15. [Between roughly January 2008 and August 2018], the defendants . . . devised and intended to devise a scheme and artifice for obtaining money by means of material false and fraudulent pretenses, representations, and promises, to wit: to defraud consumers by purchasing counterfeit electronic devices, including Apple and Samsung cell phones, to then resell as genuine and new . . . .

16. The goal of the scheme was to enrich [Defendants] . . . by selling devices bearing counterfeit marks misrepresented as genuine and new.

### Manner and Means

17. As part of the scheme and artifice to defraud, . . . [Defendants] misrepresented the quality and type of electronic items for sale as genuine and new on online platforms, including Amazon and eBay.

18. The means by which Defendants and others achieved and attempted to achieve the goal of this scheme included, among others:

    (a) Smuggling counterfeit products in bulk from Hong Kong and China.

    (b) Repackaging counterfeit devices to appear as new and genuine devices for shipment to individual consumers.

    (c) Misrepresenting the genuineness, quality, and condition of the electronic devices offered for sale on their online selling platforms.

> 19. [Between roughly January 2008 through August 2018], the defendants, . . . [wired materials to customers] . . . to wit: photographs and descriptions of electronic devices bearing counterfeit marks; . . . .

*Superseding Indictment,* Dkt. 210, ¶¶ 14-19.

Given these allegations, the Court generally describes Count 1 as follows in the jury instructions:

> "Count 1 charges defendants with conspiring to commit wire fraud by *selling counterfeit goods that the defendants represented to be new and genuine*."

*Court's Final Instruction No. 23* (emphasis added).

The government objected to the italicized language, even though that verbiage came right out of the indictment. *See* Dkt. 210, ¶ 14. Likewise, the government objected to parts of the Court's jury instructions on mail and wire fraud. Each of these instructions begins by informing the jury of the charges each individual defendants faces. For example, the instruction on wire fraud starts out like this:

**Instruction No. 27**
**Wire Fraud**

In Counts 2, 3, 4, 6, and 9, the government has charged five defendants with separate instances of wire fraud in violation of Section 1343 of Title 18 of the United States Code. The charges are detailed in this chart:

| Count | Defendant | Approximate Date of Wire | Use of Interstate Wire Communications |
|---|---|---|---|
| 2 | Michael Iyerusalimets | 3/7/2016 | Advertised, sold, and caused purchase of counterfeit Samsung charger listed as "authentic" on Amazon.com |
| 3 | Anna Iyerusalimets Michael Iyerusalimets | 3/14/2016 | Advertised, sold, and caused purchase of counterfeit Apple iPhone and Samsung charger listed as "new" on eBay.com |
| 4 | Kristina Babichenko Tim Babichenko | 3/17/2016 | Advertised, sold, and caused purchase of counterfeit Samsung phone and battery listed as "new" on eBay.com |
| 6 | Tim Babichenko | 10/24/2017 | Advertised, sold, and caused purchase of counterfeit Apple iPhones listed as "new" on Amazon.com |
| 9 | David Bibikov | 12/12/2017 | Advertised, sold, and caused purchase of counterfeit Apple iPhone listed as "new" on Amazon.com |

*Court's Final Jury Instruction, No. 27.*

Notably, that chart was lifted – word for word – from the indictment. *See* Dkt. 210, at 8. And because the government explicitly alleged that every single item sold was "counterfeit," the Court's instruction goes on to inform the jury that it will need to determine that those items were, in fact, "counterfeit." After laying out the elements of wire fraud, the Court added this paragraph to the wire-fraud instruction:

> In this case, each wire fraud charge alleges that the particular good sold was "counterfeit." Accordingly, to find a defendant guilty of wire fraud, the government must not only prove the four elements [of wire fraud] listed above, it must also prove that the defendant knowingly used a "counterfeit mark" on or in connection with the good. The term "counterfeit mark" is defined later in these instructions, in Instruction No. 33.

*Id.*

The government objected to that paragraph (and a similar paragraph in the mail fraud instruction), arguing that by giving such an instruction, the Court would: (1) violate the basic rule that allows prosecutors to plead in the conjunctive and prove in the disjunctive; (2) "unduly narrow the case in a way that hinders the truth-finding mission of the trial . . ." Dkt. 1563, at 5; and (3) run afoul of the law-of-the-case doctrine. The Court respectfully disagrees.

## ANALYSIS

A trial judge is obligated to properly instruct the jury on the law and on the questions the jury is to decide. The judge has considerable discretion in deciding upon the language of the jury instructions, "so long as the substance of the relevant point is adequately expressed." *Boyle v. United States,* 556 U.S. 938, 947 (2009). Still, though, the court's discretion is cabined to the extent that "the instructions should be confined . . . to the issues in the case and the pertinent facts developed by the evidence." *See generally Wright & Miller*, 2A Fed. Prac. & Proc. Crim. § 485 (4th ed.). And in criminal cases, the court must rely on the charges contained in the indictment in formulating jury instructions. As one court has explained, the "language employed by the government in its indictment becomes an essential and delimiting part of the charge itself, such that "'[i]f an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with

those particulars.'" *United States v. Farr*, 536 F.3d 1174, 1181 (10th Cir. 2008) (citation omitted); *see also Stirone v. United States*, 361 U.S. 212, 217 (1960).

### A.   Plead in the Conjunctive, Prove in the Disjunctive

Turning to the government's first argument, the Court is not persuaded that the disputed jury instructions violate the basic rule that when a statute specifies two or more ways in which an offense may be committed, the government may plead in the conjunctive and prove in the disjunctive. Before getting into the specifics of this case, it's useful to take a look at how this rule typically plays out.

A textbook illustration of the rule is found in *United States v. Robertson,* 895 F.3d 1206 (9th Cir. 2018). There, the indictment alleged that a postal service employee embezzled mail that had been "entrusted to her" *and* that "came into her possession." The jury instructions, however, used the disjunctive "or" – requiring the government to prove that Roberts was *either* entrusted with the mail *or* that she came into possession of the mail she was accused of embezzling. The government didn't have to prove both things to secure a conviction. After all, the underlying statute expressly said either would suffice. *See* 18 U.S.C. § 1709.

Based on these sorts of cases*,* the government says it should be allowed to secure a conviction on the wire-fraud conspiracy charge without proving the defendants conspired to commit fraud by selling *counterfeit* electronic devices*.* Rather, the government says it has the option of proving *either* that: (1) defendants

conspired to sell genuine goods that defendants misrepresented as being "new"; *or* (2) that they conspired to sell *counterfeit* goods that they misrepresented as being either genuine or new.

The Court is not persuaded. First, and most fundamentally, the Court is not dealing with a statute that lays out two or more ways in which an offense may be committed. Rather, the indictment here charges a general crime – conspiracy to commit wire fraud – in a factually specific way. Further, the conjunctive/disjunctive cases aren't useful by analogy because the government did not plead two factual theories in its indictment – one involving misrepresentations as to *genuine* goods, and the other involving misrepresentations as to *counterfeit* goods. Rather, the indictment plainly alleges one key factual predicate – that the defendants conspired to sell *counterfeit* electronic devices. Given the language of the indictment, the counterfeits goods may well have been "used" or "refurbished" – after all, the indictment says defendants misrepresented the counterfeit electronic devices as having been both "new *and* genuine." But the government cannot escape its repeated allegations that the goods were alleged to be "*counterfeit*."

In an effort to broaden its factual theories (and the indictment itself), the government plucks a sentence from the "manner and means" section of its indictment. Here is that sentence – in bolded typeface:

> The means by Defendants and others achieved and attempted to
> achieve the goal of this scheme included, among others:

ORDER - 8

   (a) Smuggling counterfeit products in bulk from Hong Kong and China.

   (b) Repackaging counterfeit devices to appear as new and genuine devices for shipment to individual consumers.

   ***(c) Misrepresenting the genuineness, quality, and condition of the electronic devices offered for sale on their online selling platforms.***

*Superseding Indictment,* Dkt. 210, ¶ 18 (emphasis added).

Of course, the bolded sentence does not explicitly refer to counterfeit goods. But when its read in context of the entire indictment, it is clear that conspiracy charged in Count 1 (and scheme to defraud alleged in mail and wire fraud counts) deals with "*counterfeit* electronic devices." The many allegations quoted above—drawn from paragraphs 14 through 19 of the indictment—demonstrate that point. Indeed, even widening the lens to capture all of Paragraph 18, rather than just 18(c), is enough to reveal that the defendants have been indicted for conspiring to sell *counterfeit* electronic devices. *See generally United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000) ("An indictment 'should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'"). For these reasons, the Court is not persuaded by the government's argument related to the conjunctive/disjunctive line of cases. Rather, as the Court sees it, the more relevant question is how much flexibility the government has in straying from the factual scheme described in the indictment. At what point does it

ORDER - 9

stray so far that a defendant's Fifth and Sixth Amendment rights are implicated?

**B.      Constructive Amendment; Prejudicial Variance**

The Fifth Amendment guarantees a criminal defendant "[the] right to stand trial only on charges made by a grand jury in its indictment." *United States v. Garcia-Paz*, 282 F.3d 1212, 1215 (9th Cir. 2002). After an indictment has been returned and criminal proceedings are underway, the indictment's charges may not be broadened by amendment, either literal or constructive, except by the grand jury itself. *See, e.g., Stirone v. United States*, 361 U.S. 212, 215-16 (1960). Differences between the presentation of evidence at trial and the allegations in an indictment may qualify as a "variance" or a "constructive amendment." *United States v. Hartz*, 458 F.3d 1011, 1020 (9th Cir. 2006).

A constructive amendment "occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Hartz*, 458 F.3d 1011, 1020 (9th Cir. 2006). A variance, on the other hand, "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.* Put differently, "a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." *United States. v. Stuckey,* 220 F.3d 976, 981 (8th Cir. 2000).

ORDER - 10

The difference between the two concepts stems from the underlying constitutional rights affected. *Stuckey*, 220 F.3d at 981. A constructive amendment violates the Fifth Amendment right not to "be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. A variance, on the other hand affects the defendant's Sixth Amendment right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. In a variance, "[t]he charging document does not change, only the evidence against which the defendant is expected to defend." *Stuckey,* 220 F.3d at 981. Granted, "[t]he line that separates a constructive amendment from a variance is not always easy to define," but the difference is significant: "a constructive amendment typically mandates reversal, while 'a variance requires reversals only if it prejudices a defendant's substantial rights.'" *United States v. Ward,* 747 F.3d 1184, 1189 (9th Cir. 2014) (citations omitted); *see* Fed. R. Crim. P. 52(a).

Several cases illustrate that jury instructions may constructively amend an indictment. In *United States v. Farr*, 536 F.3d 1174 (10th Cir. 2008), for example, the government charged Farr with a crime under 26 U.S.C. § 7201, which is a generic tax evasion provision. Significantly, though, the government did not seek a broad, general indictment that simply recited the language of § 7201; instead, the government added factual detail: It said the defendant violated § 7201 *by failing to*

ORDER - 11

*pay quarterly income taxes for a medical clinic*. At trial, however, defense counsel argued that those quarterly taxes were not *her* personal responsibility, as she was not the employer – the medical clinic was. The government pivoted at trial, pursuing a theory that Ms. Farr should be liable for tax evasion because she had failed to pay a "trust fund recovery penalty" that was her personal responsibility.

The trial judge contemplated acquitting Farr, given the difference between the government's factual theory advanced at trial as compared to that alleged in the indictment. But instead, the judge tried to "save the trial" by giving a jury instruction that required the jury to treat a failure to pay the quarterly taxes interchangeably with a failure to pay the other tax penalty. *Id.* at 1179. The judge was frustrated at having to step in, given that government had had "four years [prior to trial] to get it right in the indictment." *Id.* at 1178. As he said, "it rankles me to be having to scab over this problem [that] could so easily have been avoided . . . By giving this instruction, I'm pulling the case out of the ditch for the government and it rankles me to have to be doing that." *Id.* at 1179. With that disputed jury instruction in place, Farr was convicted.

The Tenth Circuit reversed and remanded, concluding that the judge had constructively amended the indictment by giving the instruction. On appeal, the court noted that the problems were of the government's own making: "Had the government simply charged Ms. Farr generically under Section 7201 with the

ORDER - 12

willful evasion of a tax, we might have a different situation. But it did not. Instead, the government opted to include in its indictment particulars about the nature of the tax at issue, specifically charging her with evading the "quarterly employment tax . . . due and owing by her." *Id.* at 1181. The court went on to observe, "It is settled law in this circuit, as elsewhere, that the language employed by the government in its indictment becomes an essential and delimiting part of the charge itself, such that '[i]f an indictment charges the particular, the jury instructions and the evidence introduced at trial must comport with those particulars.'" *Id.* at 1181 (citation omitted).

The Ninth Circuit faced similar facts in *Jeffers v. United States*, 392 F.2d 749, 751-52 (9th Cir. 1968). There, the court found a fatal variance in a fraud case where the indictment charged that donations from followers of a religious group were used for non-religious purposes, but the evidence showed only that the money was used in ways contrary to the representations made when collecting it. The court explained that "[w]hile the government may very well have intended this latter fraudulent representation or scheme to defraud as the basis of the charges made in the indictment, the fact remains that it did not so charge." *Id*. at 752.

In *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002), the Ninth Circuit found a fatal variance where the indictment charged the defendant with misrepresenting *the fact that the computer servers had been upgraded*, but the

ORDER - 13

court's instructions allowed the jury to convict the defendant of wire fraud if it found that the defendant had misrepresented *how the servers had been upgraded*."

In yet another case, *Stirone v. United States,* 361 U.S. 212, 217-19 (1960), the court held that there was a constructive amendment where the grand jury found that Stirone had violated the Hobbs Act by interfering with interstate *importation of sand*, but the court allowed evidence of, and instructed the jury that it convict for, interference with interstate *exportation of steel. See also, e.g., United States v. Ward,* 747 F.3d 1184, 1189 (9th Cir. 2014); *United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002).

This is precisely the situation the government finds itself in. It wishes to pursue a different, broader factual theory than that alleged in the indictment. To allow it to do so would work a constructive amendment to the indictment.

3. **Law of the Case**

Finally, the Court will address the government's assertion that the law-of-the-case doctrine requires the Court to give the same instruction it gave during the first trial, despite the fact that this specific issue was never raised.

In this regard, the government argues that "the jury instructions provided in the first trial are law of the case – regardless of whether the defendants objected to them in the first trial." *Supp. Br.,* Dkt. 1536, at 6. The government supports this assertion with a citation to the Seventh Circuit's decision in *Jabat, Inc. v. Smith*,

201 F.3d 852, 857 (7th Cir. 2000), and it draws the Court's attention to this sentence: "'When parties do not object to jury instructions, these instructions generally become the law of the case.'" *Id.* (citation omitted).

The government's reliance is misplaced. First, this Seventh Circuit case is not controlling. Second, it is distinguishable, as *Jabat* did not involve a retrial. Rather, the issue boiled down to a party being stuck with an unobjected-to instruction *on appeal.* The specific issue was whether the plaintiff was entitled to future lost income and whether that issue should have gone to the jury. The appellate court found that the defendant's argument was an indirect challenge to a jury instruction that instructed the jury on future lost income. The defendant had waived the issue by not objecting to the jury instruction below. *Id.* The court then offered up this statement (which is the one the government relies upon): "'When parties do not object to jury instructions, these instructions generally become the law of the case.'" *Id*.

Further, the Court does not view the law-of-the-case doctrine as putting it in so tight a straitjacket that it can't even take up issues that were not raised in the first trial. The rule surely is more flexible than that, and the Ninth Circuit has said as much, commenting that the doctrine is not an "'inexorable command.'" *United States v. Estrada-Lucas*, 651 F.2d 1261, 1264 (9th Cir. 1980) (citation omitted).

In this instance, nobody raised this issue about the jury instructions during

the first trial. So the Court cannot fairly be seen as reversing course. Rather, the jury instructions lacked clarity before; the Court is now improving them. And, even more concerning, if the jury had indeed reached verdicts based on the instructions previously given, the government could have secured a conviction based on a theory that is broader than that alleged in the indictment – which is clearly erroneous. The Court does not intend to repeat that error.

## ORDER

The government's objections to the Court's jury instructions, as described above, are **OVERRULED** for the reasons stated on the record during trial, as further supplemented by this memorandum.

DATED: July 26, 2022

B. Lynn Winmill
U.S. District Court Judge